# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| GWENDOLYN G. THOMPSON,<br>Appellant, | DOCKET NUMBER<br>AT-0752-09-0883-C-1 |
| v. | |
| UNITED STATES POSTAL SERVICE,<br>Agency. | DATE: September 9, 2016 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Samuel Lovett, Sr., Atlanta, Georgia, for the appellant.

Christopher Pearson, Atlanta, Georgia, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied her petition for enforcement of the Board's final order reversing her indefinite suspension. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2      The underlying appeal concerned the imposition of the appellant's indefinite suspension for medical reasons[2] from her position as a Supervisor, Maintenance Operations, at the agency's Atlanta Bulk Mail Center. In its final order on the merits, the Board ordered the agency to cancel the appellant's suspension and pay her the correct amount of back pay, interest on back pay, and other benefits. *Thompson v. U.S. Postal Service*, MSPB Docket No. AT-0752-09-0883-I-1, Final Order (Apr. 30, 2014). The appellant filed a petition for enforcement of that order with the Board's Atlanta Regional Office, contesting the amount of back pay computed by the agency. Compliance File (CF), Tab 1. The agency paid the appellant back pay for the period from the date she had been sent home for medical reasons until the date that, according to a fitness‑for‑duty

---

[2] The appellant filed a separate appeal concerning the allegedly discriminatory and improper continuation of her suspension. *Thompson v. U.S. Postal Service*, MSPB Docket No. AT-0752-11-0891-I-4. The imposition of an indefinite suspension and the failure to terminate that suspension after the condition subsequent has occurred are separately reviewable agency actions. *Rhodes v. Merit Systems Protection Board*, 487 F.3d 1377, 1381 (Fed. Cir. 2007); *Arrieta v. Department of Homeland Security*, 108 M.S.P.R. 372, ¶ 9 (2008).

examination conducted 2 months into her suspension, she was determined to be unable to perform the essential duties of her position without endangering herself or others. CF, Tab 3 at 1, Tab 13, Tab 14 at 2 n.*. The appellant asserted that her relief should not end as of the date of that fitness‑for‑duty examination but rather should continue until the date the agency had returned her to duty. CF, Tab 3 at 1. She argued that evidence of that examination failed to establish that she was not ready, willing, and able to work during the relevant period and that to find otherwise would circumvent findings in the Board's final order on the merits of the imposition of her suspension. CF, Tabs 7, 15.

¶3    After providing the parties multiple opportunities to develop the record on the pertinent issues, CF, Tabs 3, 14, the administrative judge denied the appellant's petition for enforcement, CF, Tab 16, Compliance Initial Decision (CID). The administrative judge found that the appellant's argument for discounting the evidence of the fitness‑for‑duty examination was based on a flawed reading of the Board's final order. CID at 5-6. The administrative judge further found that the agency's evidence regarding that examination constituted "concrete and positive evidence" that the appellant was not ready, willing, and able to work and that the appellant had failed to submit or identify record evidence showing otherwise. CID at 4‑5.

¶4    On petition for review, the appellant renews her arguments that the evidence regarding the fitness‑for‑duty examination is insufficient to satisfy the agency's burden of proving compliance with the Board's final order. Compliance Petition for Review (CPFR) File, Tab 1 at 2, 11-12. She further asserts that the administrative judge was biased in favor of the agency and effectively undermined findings in the Board's final order. *E.g.*, *id.* at 5-6. Among other things, the appellant argues that the doctrines of res judicata and collateral estoppel preclude the relitigation of issues previously decided by the Board. *Id.* at 9-11. The agency has filed an opposition to her petition for review. CPFR

File, Tab 3. The appellant has filed a reply, which briefly restates her arguments. CPFR File, Tab 4 at 1-2. She has included a Duty Status Report form,[3] apparently completed by a neurologist based on an examination of the appellant about 18 days after her suspension commenced but 42 days before the agency's fitness‑for‑duty examination. *Id.* at 3. We have considered the appellant's arguments but find that she has failed to establish any basis for disturbing the compliance initial decision.

¶5          In reversing the suspension, the Board found that the agency failed to prove that the appellant's medical condition prevented her from being able to safely and efficiently perform the core duties of her position when it imposed the suspension. Final Order at 4-8. The Board considered the evidence concerning the appellant's medical condition relevant to the time she was suspended, including the evidence from her neurologist, a portion of which she has resubmitted in reply to the agency's opposition to her petition for review in this compliance proceeding. *Id*. at 5-6; CPFR File, Tab 4 at 3. The Board found that this evidence was not preponderant evidence that the appellant was medically unable to perform the duties of her position when the agency imposed her suspension. Final Order at 6. The Board further found that the fitness‑for‑duty examination was conducted 2 months after the appellant had been suspended and, therefore, was unavailable to the agency when it imposed the suspension and could not have formed a basis for its decision to suspend. *Id*. at 6-8 (noting, among other things, that the critical factor in reviewing an agency's decision to impose a suspension is the evidence that the deciding official had before him at the time he acted). The Board made no finding, however, regarding whether the

---

[3] The appellant did not submit this form to the administrative judge during this compliance proceeding, but it was part of the record during the merits phase. *Thompson v. U.S. Postal Service*, MSPB Docket No. AT-0752-09-0883-I-1, Initial Appeal File, Tab 10, Exhibit I at 5.

fitness‑for‑duty examination might be relevant evidence of the appellant's ability to perform at any other time. *Id.*

¶6　　As explained by the administrative judge, the pertinent issue in this compliance proceeding is whether the agency proved that the appellant was not ready, willing, and able to work during the period from the date of the post‑suspension fitness‑for‑duty examination until the date the agency returned her to work. CID at 4; CF, Tab 14; *see King v. Department of the Navy*, 100 M.S.P.R. 116, ¶ 13 (2005) (stating that, in a petition for enforcement, the agency bears the initial burden of proving that it has provided the appellant with the appropriate amount of back pay), *aff'd*, 167 F. App'x 191 (Fed. Cir. 2006). This is the first time this issue has been before the Board in the instant action, and the Board made no findings on this issue in the final order on the merits of the imposition of the suspension. Therefore, the doctrines of res judicata, collateral estoppel, and law of the case do not apply to this situation. *Cf., e.g.*, *Kroeger v. U.S. Postal Service*, 865 F.2d 235, 239 (Fed. Cir. 1988) (stating that collateral estoppel, or issue preclusion, is appropriate when, among other things, the identical issue was actually litigated and decided in a prior action); *Senyszyn v. Department of the Treasury*, 113 M.S.P.R. 453, ¶ 9 (2010) (explaining that, under the doctrine of res judicata, a valid, final judgment on the merits of an action bars a second action involving the same parties or their privies based on the same cause of action); *Harris v. Department of Agriculture*, 53 M.S.P.R. 78, 81 (1992) (stating that, under the law of the case doctrine, the Board will not reopen what has been previously decided in a case), *aff'd*, 988 F.2d 130 (Fed. Cir. 1993).

¶7　　The appellant has not identified, and we are not aware of, any doctrine that prohibited the administrative judge from considering evidence from the fitness‑for‑duty examination in resolving issues in this compliance proceeding. Prior to rendering his decision, the administrative judge properly informed the appellant that the Board's final order on the merits did not create such a

prohibition. CF, Tabs 3, 14. Specifically, the administrative judge properly informed the parties that, in this compliance proceeding, the agency bears the initial burden of proving that it has provided the appellant with the appropriate amount of back pay, but, if the agency produces "concrete and positive evidence, as opposed to a mere theoretical argument," demonstrating that there is some substance to its contention that the appellant was not ready, willing, and able to work during all or part of the period for which she claims entitlement to back pay, the burden shifts to the appellant to show otherwise. CF, Tab 14 at 1-2 (citing *King*, 100 M.S.P.R. 116, ¶ 13; *Lyle v. Department of the Treasury*, 85 M.S.P.R. 324, ¶ 6 (2000)). The administrative judge further notified the appellant that he considered the post-suspension fitness‑for‑duty examination to constitute such "concrete and positive evidence" and that, despite the appellant's statements that her entitlement to back pay was "obvious from the record," she should "draw the Board's attention to the record evidence she believes establishes that she was ready, willing, and able to work." CF, Tab 14 at 2. The appellant, however, submitted no new evidence in support of her contention that she was ready, willing, and able to work during the disputed period. Instead, she relied primarily on her argument that the agency failed to meet its burden based on the fitness‑for‑duty examination. CF, Tabs 1, 7-8, 10, 15.

¶8      We find no reason to disturb the administrative judge's decision to credit the results of the fitness‑for‑duty examination, which indicated that the appellant was unfit to perform the essential duties and responsibilities of her position. CID at 2-3. The board‑certified neurologist who examined the appellant diagnosed her with relapsing and remitting multiple sclerosis with major depressive episode and migraine cephalalgia. CID at 3. The neurologist concluded that her duration of risk was "permanent and progressing." *Id.* The neurologist further concluded that the appellant's working would entail substantial potential harm because of the consequences if she were to fall or drop

an item and that the danger of potential harm was imminent. *Id.* The administrative judge further credited the testimony of a second doctor, the agency's Associate Area Medical Director, who reviewed the neurologist's findings and found them credible and reliable. *Id.*

¶9 Although the appellant points to contrary medical evidence regarding her condition based on examinations prior to the fitness‑for‑duty examination, CPFR File, Tab 4 at 3, we find the later evidence submitted by the agency to be more credible regarding her ability to work during the relevant period. We acknowledge that the agency subsequently agreed to allow the appellant to return to work. However, the record is devoid of any evidence showing that the appellant had recovered sufficiently to return to work at any point between the date of her fitness‑for‑duty examination and the date the agency returned her to work. *Cf. Gonzalez v. Department of Homeland Security*, 114 M.S.P.R. 318, ¶ 21 (2010) (stating that, after an employee is determined to be medically unfit for duty, the length of the suspension is dependent, to a large extent, on the employee's diligence in pursuing effective medical treatment and/or obtaining a firm determination that she is fit for duty).

¶10 We have considered the appellant's claim that the administrative judge was biased but find no basis for disturbing the compliance initial decision. As a preliminary matter, a party should not wait until after adjudication is complete to attempt to disqualify an administrative judge. *E.g.*, *Gensburg v. Department of Veterans Affairs*, 85 M.S.P.R. 198, ¶ 7 (2000); 5 C.F.R. § 1201.42(b). The appellant did not follow the regulatory procedures for disqualifying the administrative judge based on alleged bias in his predecisional handling of the case. *See* 5 C.F.R. § 1201.42(b)−(c). Further, the administrative judge's adverse ruling on her petition for enforcement is insufficient evidence to show bias. *See Gensburg*, 85 M.S.P.R. 198, ¶ 6; *see also Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (stating that an administrative judge's

conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible") (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The appellant has not submitted any affidavit or identified any other evidence in the record to support her own unsworn assertions of bias. CPFR File, Tab 1. We find her assertions insufficient to overcome the presumption of honesty and integrity that is properly afforded the Board's administrative judges. *See Gensburg*, 85 M.S.P.R. 198, ¶ 7. Having reviewed the record, we find no evidence that the administrative judge prejudged the petition for enforcement or was biased against the appellant. In fact, the record shows that the administrative judge took particular care to advise the appellant of the relevant issues and afforded her ample opportunity to present evidence and argument. CF, Tabs 3, 14.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.